UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ROBERT GARY ET AL** | **CASE NO.  2:21-CV-00706** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AMERICAN SECURITY INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is a "Motion to Dismiss" (Doc. 6) filed by Defendant American Security Insurance Company ("American Security") wherein the mover seeks to dismiss the instant lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. Specifically, American Security maintains that Plaintiffs, Robert and Brittany Gary are not insureds, additional insureds or third-party beneficiaries of the American Security policy.

### STATEMENT OF THE CASE

This lawsuit involves a property damage insurance claim due to damages sustained to Plaintiff's home from Hurricanes Laura and Delta. Plaintiff allege that they own the home that is the subject of this lawsuit. Plaintiffs allege that American Security underpaid covered damages and that American Security adjusted the claim in bad faith.

The home is mortgaged by Pennymac Loan Services, LLC ("Pennymac"). Pennymac purchased a policy of insurance from American Security to insure its interest in the home. Plaintiffs, the Garys, are not named as insureds or additional insureds under the policy—only Pennymac is named as an insured. Plaintiffs are identified as the

"Borrower[s]" under the policy on the Declarations page. Pennymac is not a party-plaintiff in this lawsuit.

Plaintiffs filed suit seeking general damages and statutory penalties for bad faith failure to pay under Louisiana Revised Statutes 22:1892 and 1973. American Security brings this motion to dismiss based on Plaintiffs not being an insured, additional insured, or third-party beneficiary of the lender-placed policy. American Security argues that Plaintiffs do not have standing to bring this suit.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but

challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## **LAW AND ANALYSIS**

To have standing to enforce an insurance policy, a plaintiff must be (1) a named insured; (2) an additional named insured; or (3) an intended third-party beneficiary of the policy. *Barbe v. Pennymac Loan Servicing, LLC,* 383 F.Supp.3d 634, 641 (E.D. La. 2019) (citing *Brown v. Am. Modern Home Ins. Co.,* 2017 WL 2290268 *4 (E.D. La. May 25, 2017); *Lee v. Safeco Ins. Co. of am.,* 2008 WL 2622997, at *2 (E.D. La. July 2, 2008).An insurance policy is a contract, and, as with all other contracts, it constitutes the law between the parties." *Pareti v. Sentry Indem. Co.,*536 So.2d 417, 420 (La. 1988).  A court looks to the language of the policy, itself, to determine whether a plaintiff is either a named insured, additional insured, or third-party beneficiary. Se *Graphia v. Balbao Ins. Co,* 517 F.Supp.2d 854, 856 (E.D. La. Sept. 28, 2007).

American Security maintains that Robert and Brittany Gary are not insureds, additional insureds, or loss payees of any policy benefits.  American Security argues that the Garys have no cause of action to enforce the policy under Louisiana law and no bad faith claim.

*Third party Beneficiaries*

American Security argues that the contract does not create a third-party beneficiary, such as a stipulation *pour autri,* with regard to the Garys. See *Joseph v. Hospital Service District No. 2 of the Parish of St. Mary,* 939 So.2d 1206, 1212 (La. 10/15/06). A stipulation *pour autri* is never presumed; the party claiming the benefit [Plaintiffs] must show that such a stipulation in their favor exists. To do so, a plaintiff must show that (1) the contract in question "manifests a clear intention" to confer a benefit on them, (2) there is certainty

as to the benefit owed, and (3) the benefit in question is not a "mere incident of the contract." *Joseph,* 939 So.2d at 1214. In other words, the contract must confer a specific "direct benefit" in favor of the third party. *Joseph,* 939 So.2d at 1214 ("Simply stated, in the absence of a direct benefit conferred by the contract, the doctors cannot be third party beneficiaries. . .").

Lender-placed policies are designed to insure the lender's collateral whenever the borrower fails to maintain adequate insurance. *Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed. Appx. 44 (5th Cir. 2010) (homeowner was not a third party beneficiary of lender placed policy where all policy benefits were payable to the lender) *cf. Lee v. Safeco Insurance Co. of America,* 2008 WL 2622997 (E.D. La. July 2, 2008) (homeowner qualified as a third-party beneficiary where homeowner could potentially recover, as direct payee, amounts in excess of the lender's interest) and *D'Juve v. Am. Modern Home Ins. Co.,* 2015 WL 1650259, at *2 (E.D. La. Ap. 14, 2015) (same as *Lee* in that the plaintiff might have qualified as a third-party beneficiary under the policy language; however, the losses that she claimed did not exceed the lender's interest). See also, *Brown, supra,* at *5, discussion of American Modern policy (same as *D'Juve*).

American Security relies on *Williams* and argues that not only does the contract not confer a specific "direct benefit" in favor of the third party, but the policy clearly states that all policy benefits are payable to their lender. Borrowers are typically listed on the policy and pay premiums through the lender, however such circumstances are insufficient to create third-party beneficiary status unless the borrower is also due some sort of benefit under the policy. *Williams,* 398 F.App'x at 46. On the other hand, where there is a definite

benefit to the homeowner within the policy, he may be a third-party beneficiary. See *Lee v. Safeco Ins. Co. of a.,* 2008 WL 2622997 (E.D. La. Jul. 2,2008) (stipulation *pour autrui* where the insurance policy specifically provided that "[a]mounts payable in excess of your interest will be paid to the 'borrower" unless some other person is named by the "borrower" to receive payment." *Lee,* 2008 WL at *4.

Specifically, the "Loss Payment" clause in the Pennymac policy states the following:

> 12. Loss Payment.
>
> * * *
>
> c. Loss will be made payable to the named insured [Pennymac]. No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations. The undisputed portion of the loss will be payable within 30 days after [American Security] receive[s] [Pennymac's] proof of loss.

The Declarations page identifies American Security as the named insured and the Garys as only the borrower. Thus, American Security argues that the contract does not confer a "direct benefit" in favor of the Plaintiffs and does not include a stipulation *pour autrui.* In *Brown v. American Modern Home Insurance Company,* 2017 WL 2290268 (E.D. May 25, 2017), the plaintiff "borrowers" sued American Security Insurance and American Modern Home to enforce a policy of insurance that included the same "Loss Payment" clause. The Court held that the Plaintiffs had failed to state a claim against American Security for which relief could be granted:

> The American Security policy is different from the American Modern policy. It does not have a similar loss payee clause that would require payment to plaintiffs of insurance proceeds in excess of their mortgage balance. . . .
>
> There is no mention of plaintiffs' insurable interest or provisions for payment to plaintiffs. Thus, there is no manifestly clear intention for the American Security policy to provide a benefit to plaintiffs that would be sufficient to create a stipulation *pour autrui,* and plaintiffs cannot sue American Security for breaching the insurance contract.

In *Butler v. American Security Insurance Company,* the court followed *Brown* to reach that same conclusion:

> The American Security policy does not create a stipulation pour autrui in Plaintiff's favor. The policy's 'loss payment' provision obliges American Security to pay losses only to the named insured—Wells Fargo:
>
>> Loss will be made payable to the named insured. No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.
>
> This language reflects an intent to benefit Wells Fargo. It does not reflect an intent—much less a 'clear' one—to provide a 'certain benefit' to Plaintiff that is not 'mere[ly] incident[al]' to the insurance contract between Wells Fargo and American Security. Other courts agree. *See, e.g. Brown v. Am. Modern Home Ins. Co.,* No. 16-CV-6289, 2017 WL 2290268, at *6 (E.D. La. May 25, 2017) (holding that homeowner did not qualify as a third-party beneficiary under identical provision in lender-placed policy); *Graphia v. Balboa Ins. Co.,* 517 F.Supp.2d 854, 858-859 (E.D. La. 2007) (dismissing homeowner's breach-of-contract claim because homeowner was not a third-party beneficiary of lender-placed policy).

2019 WL 1714231, at *2 (internal citations omitted).

In *Farber v. Deutsche Bank Nat'l Tr. Co.,* 2020 WL 5820076 (E.D. La. Sept. 30, 2020), the Court granted American Security's motion to dismiss based on the same policy

form because the policy stated that loss payments shall be paid out to the "named insured". In addition, the OCWEN Loan Servicing was identified as the "named insured," and the Plaintiff Farber was named on the policy only as the "Borrower" and not an insured or additional named insured.

Farber argued that he was a third-party beneficiary. The court concluded that he was not because the policy did not make it "manifestly clear" that a benefit was owed to Farber by American Security.

In *Brown,* the court suggested that a plaintiff could be a third-party beneficiary of an insurance contract when the plaintiff alleges "that the amount of loss exceeds the mortgage balance." *Brown,* 2017 WL 2290268 *5.

The Garys argue that the policy defines "you" and "your," as those terms are used throughout the policy, include the Garys noting a change America Security made via an endorsement which places numerous conditions and allegedly confers direct benefits on the Garys. The Garys note the following examples of what they argue are direct benefits to them:

1. The Other Structures provisions states "[the Garys] may use up to 10% of the Coverage A Limit of Liability for loss by a Peril Insured Against to other structures described in Coverage B." Policy at 8.
2. The policy provides reimbursement to the Garys for costs incurred for reasonable repairs. Policy at 9.
3. The policy allows the Garys to use up to 10% of the Limit of Liability that applies to Coverage A to be used towards the increased cost resulting from any ordinance or law. Policy at 10.
4. Under section d. of the Loss Settlement provisions, the policy authorizes the Garys to make claims under the policy, stating "[The Garys] may disregard the replacement cost loss settlement provisions and make claim under this Certificate for loss to residential property on actual cash value basis. [The Garys]

      may then make claim for any additional liability according to the provisions of this Condition.

5. Loss Settlement, provided [the Garys] notify us of [the Garys] intent to do so within 180 days after the date of loss." Policy at 13.
6. The policy specifically grants the Garys the right to invoke appraisal. Policy at 17.

In addition, the Garys assert that the Policy also conveys indirect benefits to them. Specifically, the Garys rely on the following duties imposed on them which are set forth in the Policy under "Your Duties After Loss":

1. Give prompt notice of a loss;
2. Protect the property from further damage;
3. Make reasonable and necessary repairs;
4. Keep an accurate record of repair expenses;
5. Cooperate with ASIC [American Security] in the investigation of a claim;
6. Show ASIC the damaged property as reasonably required;
7. Provide ASIC with records as reasonably required;
8. Submit to an examination as reasonably required;
9. Provide ASIC with a proof of loss.

Policy at 12, 16.

      Plaintiffs inform the Court that after American Security sent an adjuster to inspect the property, Assurant, an agent of American Security, directly mailed the Garys a letter explaining American Security's adjustment of the loss.[1] The letter also included a net payment to the Garys for the loss in the amount of $240.76.[2] The letter further instructed the Garys on how to recover depreciation.[3] Lastly, the Garys note that the loss adjustment report American Security sent the Garys listed Plaintiff Robert Gary as the Insured.[4]

---

[1] Defendant's exhibit 1, pp. 5-6.
[2] Id. p. 5.
[3] Id. p. 6.
[4] Id. p. 7.

Defendants maintain that the Garys do not have standing because they are not named insured or third-party beneficiaries. Defendant argues that the Garys' reliance on *Cotton v. Certain Underwriters at Lloyd's of London,* 831 F.3d 592 (5th Cir. 2016) to show that they have constitutional standing is misplaced, noting that there is a difference in constitutional standing versus contractual standing. See *Perry v. Thomas,* 482 U.S. 483, 492 (1987). Constitutional standing stems from Article III of the Constitution and speaks to the court's jurisdiction. *Cotton, supra.*

Defendants asserts that its motion to dismiss is pursuant to Rule 12(b)(6) (failure to state a claim), not Rule 12(b)(1) (jurisdictional challenge), and that even though Plaintiffs have constitutional standing which confers jurisdiction on this Court, Plaintiffs do not have contractual standing.

Defendants argue that even though Plaintiff received payment as indicated above, that alone does not equate to contractual standing. In *Butler v. American Security Insurance Company,* 2019 WL 1714231 *2 (M.D. La. Apr. 17, 2019), the court explained as follows:

> To find support for her third-party-beneficiary argument, Plaintiff looks beyond the language of the policy. She argues that because American Security issued a claim payment naming she and Wells Fargo as co-payees, Wells Fargo and American Security "clearly intend[ed]" that the benefit from the policy. The argument fails to persuade: it is the contract—not the partis' conduct—that must "manifest a clear intention to benefit the third party[.]" *Joseph,* 939 So.2d at 1212.

American Security argues that even though the policy obligates the Garys to cooperate, the Payment of Loss section clearly names Pennymac as the beneficiary of the policy. Furthermore, these obligations do not elevate the Garys to the status of insureds, additional insured, or loss payees, to allow them to enforce the insurance contract. See

*Graphia,* 517 F.Supp.2d 858. ("While the doctors can perform services to satisfy the contractual obligations of the corporation, there are no direct benefits flowing to the plaintiff doctors…. "[I]n the absence of a direct benefit conferred by the contract, the doctors cannot be third party beneficiaries pursuant to LCA-C.C. art. 1978". *Joseph,* 939 So.2d at 1214.)

American Security explains that the Garys' examples of indirect benefits listed above only define the amounts that American Security is obligated to pay under different circumstances, but do not direct that any payments are to be made to the Garys noting the the Loss Payment clause controls the payment directions. In addition, even though the Garys have options under the "Loss Settlement" clause, again there is no direct benefit to the Gary's for payment. The Garys also rely on the Liberalization Clause which American Security argues does not modify its obligation under the Loss Payment clause. As to the appraisal clause which provides that a borrower is entitled to demand appraisal, American Security argues that this is just a procedural mechanism to attempt to reconcile the parties in the event they fail to agree on the amount of a loss.

The court notes that this case, filed on March 17, 2021, is in its infancy.  The Court is concerned that if the case is dismissed at this juncture without allowing Plaintiffs to amend, the Garys are at the mercy of their mortgage company to protect their interest for any alleged under-payments by American Security. As such, the Court will deny American Security's Motion to Dismiss.

## CONCLUSION

The Court finds that Plaintiffs may amend their complaint within 30 days of this ruling and will deny American Security's Motion to Dismiss.

**THUS DONE AND SIGNED** in Chambers on this 26th day of May, 2021.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE